**S. R. BARTON et al., Appellants,**

**v.**

**James T. LYNN, Secretary, Department of Housing and Urban Development, et al., Appellees.**

**No. 75–1089.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1975.

Decided Sept. 30, 1975.

Ruben L. Gray, Sumter, S.C. (Ernest A. Finney, Jr., Finney & Gray, Sumter, S.C., on brief), for appellants.

Ramon Schwartz, Jr., Sumter, S.C., Wistar Stuckey, Asst. U. S. Atty. (Thomas P. Simpson, U. S. Atty., McLeod & Schwartz, Sumter, S.C., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This case involves an urban renewal project, proposed by the local Housing Authority of the City of Sumter (South Carolina) and approved by the Secretary, Federal Housing and Urban Development, under the provisions of the Housing Act of 1949, as amended. § 1450 et seq., 42 U.S.C. The plaintiffs are either the owners of, or tenants in, houses located in an area where the existing homes under the approved project are to be demolished to make way for the construction of a neighborhood park. The defendants are the Secretary, Federal Housing and Urban Development, and the local Housing Authority. The plaintiffs were granted an administrative

hearing upon their objections to the designation of the area for park development and to the alleged failure of the Administrator and the local Housing Authority to comply with the applicable provisions of the Housing Act. After an administrative hearing, the objections were dismissed and the plaintiffs appealed to the District Court under the provision of the Administrative Procedure Act. § 702, 5 U.S.C.[1] That Act limits the scope of judicial review to administrative actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706, U.S.C. The District Court, on review of the administrative record under the Act, held that the Administrator's action was not "arbitrary * * * or otherwise not in accordance with law," and granted summary judgment in favor of the defendants. The plaintiffs have appealed. We affirm.

The plaintiffs assert a number of particulars in which they claim either the Secretary of the local Housing Authority failed to comply with the applicable statutory requirements for an acceptable project under the Act. Only one of these claims warrants any discussion; the others are wholly without merit. The claim which does require some explication concerns the application of § 1455(h), 42 U.S.C. This section provides that when any urban renewal project "includes the demolition or removal of any residential structure or structures * * * there shall be provided in the area * * * standard housing units for occupancy by low and moderate income families (including but not limited to units provided under Federal- or State-assisted housing programs and including units of low-rent housing in private accommodations assisted under section 1421b of this title) at least equal in number to the number of units occupied by such families prior to the demolition or removal of such structure or structures." For purposes of meeting the above requirement, the Secretary has authority in his discretion "to take into account suitable housing outside such area." Compliance with this requirement may, however, be waived "[I]f the Secretary finds that the percentage of vacancies for all existing housing units in the area within which the local public agency has jurisdiction is 5 per centum or greater * * *."

The Secretary, in the administrative proceedings herein, found that "in the area within which the local public agency has jurisdiction" there were "22 HUD-owned section 235 units available for sale and * * * 200 units of FHA section 236 housing which were under construction at the time of the Hearing." The administrative record, also, includes a statement that all displaced families are given priority as to the open and vacant standard housing available. He concluded that, "[S]ince only 20 housing units will be demolished as a result of the project," the requirements of the section were met and it was unnecessary, therefore, to consider "the waiver provisions of section 105(h) * * *." The plaintiffs did not dispute any of the facts on which this conclusion rested. Their complaint relates to the manner in which the Secretary and the District Court construed § 1455(h). In their view, that statute imposes an absolute duty on the local Housing Authority either to build or rehabilitate housing units equal in number to those formerly occupied by low-income families which are being demolished because of the approval of the project, and that this obligation can only be avoided or waived if "the percentage of vacancies for all existing housing units in the area * * * is 5 per centum or greater," a finding not made here by the Secretary. These conflicting interpretations of the application of the statute present the issue on this appeal.

The parties concede that the legislative history of the statute provides

---

1. For jurisdiction in the District Court under this Act in cases such as this, see Annotation, 8 A.L.R. Fed. 415 at 418–9.

no real guidance for its construction.[2] But, while it is perhaps not a model of clarity in draftsmanship, the statute itself, it seems to us, is clear in its meaning. Contrary to the position of the plaintiffs, it does not impose on the local agency the obligation to build or rehabilitate substitute "standard" homes for those low- and moderate-income families being displaced by reason of the projected development. This is so because that statute states plainly that the obligation to provide substitute "standard" housing may be satisfied through the provision of federally-supported private housing units. What Congress sought to assure by the statute was that there should be available to the displaced low- and medium-income families suitable "standard housing"[3] and if such was not available, the local agency must see that it was made available. This is a reasonable and understandable requirement. But Congress was not intending by this statute to compel the construction of any unneeded housing, particularly at federal expense; its requirement contemplated only that the local agency should see that "standard housing" was available. So long as there was available such "standard housing" "provided under Federal- or State-assisted housing programs," the obligation imposed on the local agency to provide substitute housing under the statute was satisfied.

■■■ The plaintiffs argue, however, that the concluding sentence in the statute, which authorizes a waiver by the Secretary of the requirements of the statute under certain circumstances, sets forth the sole circumstance under which the project can be approved where it does not provide for the actual construction of new housing by the local agency equal in number to the number of low- and middle-income housing units being demolished. We, however, would not give to this waiver provision the meaning ascribed to it by the plaintiffs. By this provision, the Congress was considering a housing area where there was a substantial amount of vacancies in "existing" housing units.[4] In that situation, it authorized the Secretary in his discretion to dispense with the requirement of the statute that standard housing units, meeting approved minimum standards be provided by way of replacements of the units being demolished if the number of vacancies in "existing housing units" was 5 percent or more in the area. The reason for the exception is obvious. In a community where there is already a disturbing abundance of "existing housing units," the Congress did not wish to further exaggerate the housing surplus—particularly at federal expense.

■■ We agree with the Secretary that the local agency has met the requirements of the statute: There are available for the displaced low- and moderate-income families sufficient *standard housing,* constructed under federally supported programs, in the area under the jurisdiction of the local agency, in a number far in excess of the number required to provide substitute standard housing for the displaced families. It was accordingly unnecessary to consider whether the local agency could qualify for a waiver under the concluding sentence of the statute because there was a percentage of vacancies "for all existing housing units in the area" in the amount of "5 per centum or greater." Under the conceded facts, the action of the Secretary was not in violation of law or arbitrary and the District Court properly so concluded.

The order of the District Court sustaining the administrative decision is accordingly affirmed.

*Affirmed.*

---

**2.** 1969 U.S.Code Cong. & Admin.News, p. 1524 at 1582.

**3.** This term refers to a housing unit meeting the requirements of "a minimum standards housing code, related but not limited to health, sanitation, and occupancy requirements, * * deemed adequate by the Secretary * * * ." § 1451(c), 42 U.S.C.

**4.** It should be noted that the term used is "existing housing units" and not "*standard* housing units" (Italics added).